UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - x

UNITED STATES OF AMERICA          :

      - v. -                      :

ANTONIO REYES,                    :
    a/k/a "Tone,"
    a/k/a "Capo,"                  :
CARLOS VEGA,                      :
    a/k/a "Gotti,"                 :
    a/k/a "Ant,"
    a/k/a "Califreca,"             :
    a/k/a "Tone,"                  :
JOSHUA MIRABAL,
    a/k/a "Josh,"                  :
JASON KELLY,                      :
    a/k/a "Beast,"
ANTOINE BOYCE,                    :
    a/k/a "Fetty Baller,"          :
AARON RICE,
    a/k/a "Goon,"                  :
TYRONE SCHULTZ,                   :
    a/k/a "Fats,"
ZAGORA DAVIS,                     :
    a/k/a "Bianca,"                :
JASON JARVIS,
    a/k/a "Slim,"                  :
JONATHAN ANGULO,                  :
    a/k/a "J.O.,"
                                   :

# ORIGINAL

## SEALED SUPERSEDING INDICTMENT

S2 16 Cr. 272 (VM)



USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 3|1|17

```
TAQUAN SANDERS,                    :
    a/k/a "Goose,"
    a/k/a "Goo,"                   :
ANGEL VILLAFANE,                   :
DEVIN RODRIGUEZ,
LEON ROBINSON,                     :
    a/k/a "Pop,"                   :
JOSHUA NEGRON,
TAHIEM HOLMES,                     :
NIJEL RICHARDSON,                  :
NATHANIEL COLEMAN,
AISA TOMPKINS, and                 :
TIMOTHY SHAW,                      :
    a/k/a "Tim Blood,"            :
                  Defendants. :
- - - - - - - - - - - - - - - - - - x
```

## COUNT ONE
### (Conspiracy to Distribute Narcotics)

The Grand Jury charges:

### Background

1.    The New York City Housing Authority ("NYCHA") operates, among others, a housing development in the East Harlem neighborhood of Manhattan, New York, called the President George Washington Houses (the "Washington Houses").

2.    From at least in or about 2015, up to and including in or about April 2016, in the Southern District of New York and elsewhere, ANTONIO REYES, a/k/a "Tone," a/k/a "Capo," CARLOS VEGA, a/k/a "Gotti," a/k/a "Ant," a/k/a

2

"Califreca," a/k/a "Tone," JASON KELLY, a/k/a "Beast," ANTOINE BOYCE, a/k/a "Fetty Baller," AARON RICE, a/k/a "Goon," TYRONE SCHULTZ, a/k/a "Fats," ZAGORA DAVIS, a/k/a "Bianca," JASON JARVIS, a/k/a "Slim," JONATHAN ANGULO, a/k/a "J.O.," TAQUAN SANDERS, a/k/a "Goose," a/k/a "Goo," ANGEL VILLAFANE, DEVIN RODRIGUEZ, LEON ROBINSON, a/k/a "Pop," JOSHUA NEGRON, TAHIEM HOLMES, NIJEL RICHARDSON, NATHANIEL COLEMAN, AISA TOMPKINS, and TIMOTHY SHAW, a/k/a "Tim Blood," the defendants (collectively, the "Defendants"), and others known and unknown, participated in a conspiracy to distribute significant amounts of narcotics, including crack cocaine, heroin, marijuana, and prescription pills, in and around, among other places, the Washington Houses.

3.    The Defendants and others working with them operated a drug trafficking organization (the "Washington Houses DTO"), which distributed narcotics on a daily basis.

4.    The Washington Houses DTO sold narcotics in locations around Manhattan including, for example, on public streets, inside public housing developments, inside New York City hospitals, and inside and within the vicinity of New York City schools.

5.    Members of the Washington Houses DTO possessed firearms, and planned and engaged in acts of violence to, among other reasons, protect and maintain their drug business.

3

## MEANS AND METHODS OF THE CONSPIRACY

6.     Members of the Washington Houses DTO operated in concert to sell narcotics, employing the following means and methods, among others.

7.     Members of the Washington Houses DTO fulfilled different roles within the DTO.  Among other roles, certain of the Defendants regularly sold narcotics to retail customers in hand-to-hand drug transactions; other of the Defendants obtained wholesale supplies of drugs and supervised the packaging of drugs into retail distribution packages; other of the Defendants managed the distribution of retail packages to the street-level sellers and were responsible for collecting the proceeds of the drug transactions.

8.     An individual not named in this Indictment ("CC-1") managed a crew of retail drug sellers who worked under CC-1 to sell crack cocaine, including TYRONE SCHULTZ, a/k/a "Fats," ZAGORA DAVIS, a/k/a "Bianca," JASON JARVIS, a/k/a "Slim," and LEON ROBINSON, a/k/a "Pop," the defendants.  The Defendants who were members of CC-1's crew worked in shifts, 24 hours a day and seven days a week, to sell narcotics, coordinating with one another as to who would be available to customers who wished to buy narcotics at various times of the day or night.  The Defendants who were members of CC-1's crew

4

also coordinated with one another as to who was running low on narcotics to sell at any given time, making adjustments accordingly in terms of directing drug customers to purchase narcotics from another crew member who could supply them with narcotics.  In or about March 2016, CC-1 and SCHULTZ discussed, in substance and in part, how lucrative the month of February had been for their drug trafficking operations, and how the future would bring even more success.

9.    In addition to supplying narcotics to the retail drug sellers who reported directly to him, CC-1 also provided narcotics to other members of the Washington Houses DTO.  CC-1 agreed to supply JASON KELLY, a/k/a "Beast," the defendant, with narcotics, and assured KELLY, in substance and in part, that CC-1 would also supply ANTONIO REYES, a/k/a "Tone," a/k/a "Capo," the defendant, with narcotics.  In or about 2015 and 2016, KELLY and REYES, as well as NIJEL RICHARDSON, the defendant, engaged in street-level crack cocaine sales to customers, among other things.  During the same time period, REYES also illegally sold, among other prescription medication, Percocet and Xanax.

10.    ANTONIO REYES, a/k/a "Tone," a/k/a "Capo," the defendant, played a leadership role in the Washington Houses DTO.  REYES boasted, in substance and in part, that he was well connected in the Washington Heights neighborhood of Manhattan,

5

and explained, in substance and in part, that narcotics can be sold for higher prices in Washington Heights than in other parts of New York City, such as Queens.  REYES also personally packaged and sold crack cocaine, and had other members of the Washington Houses DTO prepare crack cocaine for sale and perform other work under his direction.  For example, JASON KELLY, a/k/a "Beast," the defendant, referred to himself as a "runner" for REYES, and in or about April 2016, KELLY began using REYES's old cellphone to conduct narcotics transactions on REYES's behalf.  Using REYES's phone, KELLY discussed with AISA TOMPKINS, the defendant, in substance and in part, driving to pick up a supply of narcotics that KELLY and TOMPKINS had purchased together.

11.  Moreover, when DEVIN RODRIGUEZ, the defendant, ran out of narcotics to sell, he discussed with ANTONIO REYES, a/k/a "Tone," a/k/a "Capo," the defendant, in substance and in part, whether RODRIGUEZ could obtain additional supplies of narcotics from REYES.  REYES and TAHEIM HOLMES, the defendant, also discussed, in substance and in part, HOLMES receiving narcotics from REYES.  Similarly, REYES heard from AARON RICE, a/k/a "Goon," the defendant, that RICE wanted his phone, and REYES assured RICE, in substance and in part, that RICE was not missing any narcotics transactions.  On another occasion, REYES and RICE discussed the purchase and sale of Percocet.

6

12.   ANTONIO REYES, a/k/a "Tone," a/k/a "Capo," the defendant, also made plans with ANTOINE BOYCE, a/k/a "Fetty Baller," the defendant, to use individuals they referred to as "mules" and "bitches" to transport narcotics and firearms on buses across state lines.

13.   ANTONIO REYES, a/k/a "Tone," a/k/a "Capo," the defendant, was supplied with narcotics for resale, in part, by TAQUAN SANDERS, a/k/a "Goose," a/k/a "Goo," and NIJEL RICHARDSON.

14.   CARLOS VEGA, a/k/a "Gotti," a/k/a "Ant," a/k/a "Califreca," a/k/a "Tone," the defendant, also played a leadership role in the Washington Houses DTO.  Among other things, VEGA supervised a crew of workers who sold retail quantities of drugs as part of the Washington Houses DTO.  For example, VEGA, who personally sold crack cocaine and marijuana to customers, routinely directed JOSHUA NEGRON, the defendant, to meet with narcotics customers.  VEGA also participated in sales of crack cocaine and heroin with ANGEL VILLAFANE, the defendant.  In addition, VEGA supplied JASON KELLY, a/k/a "Beast," the defendant, with wholesale quantities of marijuana.

15.   Among other locations, members of the Washington Houses DTO carried out their drug trafficking operation at locations in New York City where minors and other vulnerable

7

individuals were present. For example, CC-1 sold narcotics at two New York City hospitals; and CARLOS VEGA, a/k/a "Gotti," a/k/a "Ant," a/k/a "Califreca," a/k/a "Tone," the defendant, directed JOSHUA NEGRON, the defendant, to sell narcotics at a New York City school.

16. Members of the Washington Houses DTO also possessed firearms, and planned and engaged in acts of violence, during the course of the conspiracy, several of which are described below, to among other reasons, protect and maintain their drug business.

17. In or about 2016, ANTOINE BOYCE, a/k/a "Fetty Baller," the defendant, bragged to another individual that BOYCE had violently assaulted someone the previous day, knocking the victim unconscious.

18. In or about 2016, an unindicted co-conspirator ("CC-1") told CARLOS VEGA, a/k/a "Gotti," a/k/a "Ant," a/k/a "Califreca," a/k/a "Tone," the defendant, that CC-1 had been robbed the previous day, and that there would be a $5,000 reward for committing an act of violence against the person who had robbed CC-1. VEGA spoke about the reward with JOSHUA NEGRON, the defendant.

19. ANTONIO REYES, a/k/a "Tone," a/k/a "Capo," frequently spoke about carrying a gun in 2016. For example,

8

REYES and ANTOINE BOYCE, a/k/a "Fetty Baller," the defendant, discussed, in substance and in part, BOYCE's access to weapons, and that BOYCE was looking to acquire more weapons.  Similarly, REYES stated, in substance and in part, to JONATHAN ANGULO, a/k/a "J.O.," the defendant, that REYES was armed with a firearm.  During this conversation, REYES and ANGULO discussed a plan to shoot someone who had recently been in a dispute with REYES, noting that something needed to be done because it was "[their] block."

20.  In or about February 2016, DEVIN RODRIGUEZ, the defendant, told an individual, in substance and in part, that RODRIGUEZ and ANTONIO REYES, a/k/a "Tone," a/k/a "Capo," the defendant, had carried out a robbery of a drug dealer with a gun.  RODRIGUEZ explained, in substance and in part, that he and REYES had discussed the robbery beforehand, and that REYES had advised RODRIGUEZ as to how and when they should commit the robbery of the drug dealer.  REYES waited in the car while RODRIGUEZ went to the victim's home armed with a firearm.  RODRIGUEZ found other victims inside and he told them to get on the floor.  RODRIGUEZ then cracked open a safe in the apartment and stole money and electronics, among other items.

21.  In or about April 2016, ANTONIO REYES, a/k/a "Tone," a/k/a "Capo," the defendant, told JASON KELLY, a/k/a

9

"Beast," the defendant, in substance and in part, that REYES had "choke[d]" someone for money REYES believed was owed to him, and that REYES was going to "choke him out" again for more of the money.

## STATUTORY ALLEGATIONS

22.   From at least in or about 2015, up to and including in or about April 2016, in the Southern District of New York and elsewhere, ANTONIO REYES, a/k/a "Tone," a/k/a "Capo," CARLOS VEGA, a/k/a "Gotti," a/k/a "Ant," a/k/a "Califreca," a/k/a "Tone," JASON KELLY, a/k/a "Beast," ANTOINE BOYCE, a/k/a "Fetty Baller," AARON RICE, a/k/a "Goon," TYRONE SCHULTZ, a/k/a "Fats," ZAGORA DAVIS, a/k/a "Bianca," JASON JARVIS, a/k/a "Slim," JONATHAN ANGULO, a/k/a "J.O.," TAQUAN SANDERS, a/k/a "Goose," a/k/a "Goo," ANGEL VILLAFANE, DEVIN RODRIGUEZ, LEON ROBINSON, a/k/a "Pop," JOSHUA NEGRON, TAHIEM HOLMES, NIJEL RICHARDSON, NATHANIEL COLEMAN, AISA TOMPKINS, and TIMOTHY SHAW, a/k/a "Tim Blood," the defendants, and others known and unknown, intentionally and knowingly did combine, conspire, confederate and agree, together and with each other, to violate the narcotics laws of the United States.

23.   It was a part and an object of the conspiracy that ANTONIO REYES, a/k/a "Tone," a/k/a "Capo," CARLOS VEGA, a/k/a "Gotti," a/k/a "Ant," a/k/a "Califreca," a/k/a "Tone,"

JASON KELLY, a/k/a "Beast," ANTOINE BOYCE, a/k/a "Fetty Baller," AARON RICE, a/k/a "Goon," TYRONE SCHULTZ, a/k/a "Fats," ZAGORA DAVIS, a/k/a "Bianca," JASON JARVIS, a/k/a "Slim," JONATHAN ANGULO, a/k/a "J.O.," TAQUAN SANDERS, a/k/a "Goose," a/k/a "Goo," ANGEL VILLAFANE, DEVIN RODRIGUEZ, LEON ROBINSON, a/k/a "Pop," JOSHUA NEGRON, TAHIEM HOLMES, NIJEL RICHARDSON, NATHANIEL COLEMAN, AISA TOMPKINS, and TIMOTHY SHAW, a/k/a "Tim Blood," the defendants, and others known and unknown, would and did distribute and possess with the intent to distribute controlled substances, in violation of Title 21, United States Code, Section 841(a)(1).

24. The controlled substances that ANTONIO REYES, a/k/a "Tone," a/k/a "Capo," CARLOS VEGA, a/k/a "Gotti," a/k/a "Ant," a/k/a "Califreca," a/k/a "Tone," JASON KELLY, a/k/a "Beast," ANTOINE BOYCE, a/k/a "Fetty Baller," AARON RICE, a/k/a "Goon," TYRONE SCHULTZ, a/k/a "Fats," ZAGORA DAVIS, a/k/a "Bianca," JASON JARVIS, a/k/a "Slim," JONATHAN ANGULO, a/k/a "J.O.," TAQUAN SANDERS, a/k/a "Goose," a/k/a "Goo," ANGEL VILLAFANE, DEVIN RODRIGUEZ, LEON ROBINSON, a/k/a "Pop," JOSHUA NEGRON, TAHIEM HOLMES, NIJEL RICHARDSON, NATHANIEL COLEMAN, AISA TOMPKINS, and TIMOTHY SHAW, a/k/a "Tim Blood," the defendants, conspired to distribute and possess with the intent to distribute were: (i) 280 grams and more of mixtures and

substances containing a detectable amount of cocaine base, in a form commonly known as "crack cocaine," in violation of Title 21, United States Code, Section 841(b)(1)(A); (ii) mixtures and substances containing a detectable amount of heroin, in violation of Title 21, United States Code, Section 841(b)(1)(C); (iii) mixtures and substances containing a detectable amount of oxycodone, in violation of Title 21, United States Code, Section 841(b)(1)(C); and (iv) 50 kilograms and more of marijuana, in violation of Title 21, United States Code, Section 841(b)(1)(C).

(Title 21, United States Code, Section 846.)

## COUNT TWO
### (Conspiracy to Distribute Narcotics)

The Grand Jury further charges:

25. From at least in or about 2001, up to and including in or about February 2016, in the Southern District of New York and elsewhere, CARLOS VEGA, a/k/a "Gotti," a/k/a "Ant," a/k/a "Califreca," a/k/a "Tone," and JOSHUA MIRABAL, a/k/a "Josh," the defendants, and others known and unknown, intentionally and knowingly did combine, conspire, confederate and agree, together and with each other, to violate the narcotics laws of the United States.

26. It was a part and an object of the conspiracy that CARLOS VEGA, a/k/a "Gotti," a/k/a "Ant," a/k/a "Califreca,"

12

a/k/a "Tone," and JOSHUA MIRABAL, a/k/a "Josh," the defendants, and others known and unknown, would and did distribute and possess with the intent to distribute controlled substances, in violation of Title 21, United States Code, Section 841(a)(1).

27. The controlled substances that CARLOS VEGA, a/k/a "Gotti," a/k/a "Ant," a/k/a "Califreca," a/k/a "Tone," and JOSHUA MIRABAL, a/k/a "Josh," the defendants, conspired to distribute and possess with the intent to distribute were: (i) 280 grams and more of mixtures and substances containing a detectable amount of cocaine base, in a form commonly known as "crack cocaine," in violation of Title 21, United States Code, Section 841(b)(1)(A); (ii) five kilograms and more of mixtures and substances containing a detectable amount of cocaine, in violation of Title 21, United States Code, Section 841(b)(1)(A); (iii) mixtures and substances containing a detectable amount of heroin, in violation of Title 21, United States Code, Section 841(b)(1)(C); and (iv) 50 kilograms and more of marijuana, in violation of Title 21, United States Code, Section 841(b)(1)(C).

(Title 21, United States Code, Section 846.)

## COUNT THREE
### (Murder in Furtherance of Narcotics Trafficking)

The Grand Jury further charges:

28. On or about July 30, 2005, in the Southern District of New York, CARLOS VEGA, a/k/a "Gotti," a/k/a "Ant," a/k/a "Califreca," a/k/a "Tone," and JOSHUA MIRABAL, a/k/a "Josh," the defendants, during and in relation to a drug trafficking crime for which they may be prosecuted in a court of the United States, namely, the drug trafficking conspiracy alleged in Count Two of this Indictment, knowingly did use and carry firearms, and, in furtherance of such crime of violence, did possess firearms, and did aid and abet the use, carrying, and possession of firearms, and in the course of that drug trafficking crime did cause the death of a person through the use of at least one of those firearms, which killing is murder as defined in Title 18, United States Code, Section 1111(a), namely the death of Philip Diaz, a/k/a "Philly," in the vicinity of 1954 First Avenue, New York, New York.

(Title 18, United States Code, Sections 924(j)(1) and 2.)

14

## COUNT FOUR
## (Possession of Firearm in Furtherance of Narcotics Trafficking)

The Grand Jury further charges:

29.   From at least in or about 2015, up to and including in or about April 2016, in the Southern District of New York and elsewhere, ANTONIO REYES, a/k/a "Tone," a/k/a "Capo," DEVIN RODRIGUEZ, JONATHAN ANGULO, a/k/a "J.O.", AARON RICE, a/k/a "Goon," and ANTOINE BOYCE, a/k/a "Fetty Baller," the defendants, during and in relation to a drug trafficking crime for which they may be prosecuted in a court of the United States, namely, the narcotics conspiracy charged in Count One of this Indictment, knowingly used and carried firearms, and, in furtherance of such crime, possessed firearms, and aided and abetted the use, carrying, and possession of firearms, to wit, handguns, at least one of which was brandished.

(Title 18, United States Code,
Sections 924(c)(1)(A)(i) & (ii), and 2.)

## COUNT FIVE
## (Assault of Federal Officer)

The Grand Jury further charges:

30.   On or about April 26, 2016, in the Southern District of New York, ANTOINE BOYCE, a/k/a "Fetty Baller," the defendant, knowingly did forcibly assault, resist, oppose, impede, intimidate, and interfere with a person designated in Title 18, United States Code, Section 1114, while engaged in and

15

on account of the performance of official duties, to wit, at 500 Pearl Street, in New York, New York, BOYCE forcibly assaulted and, in doing so, made physical contact with a Deputy United States Marshal who was engaged in the performance of his official duties, thereby inflicting bodily injury.

(Title 18, United States Code, Sections 111(a)(1) & (b), and 2)

## SPECIAL FINDINGS

### SPECIAL FINDINGS AS TO CARLOS VEGA

31.  Count Three of the Indictment is realleged and incorporated by reference as though fully set forth herein. As to Count Three of the Indictment, alleging the murder of Philip Diaz, a/k/a "Philly," in furtherance of the drug trafficking conspiracy alleged in Count Two of this Indictment, the defendant CARLOS VEGA, a/k/a "Gotti," a/k/a "Ant," a/k/a "Califreca," a/k/a "Tone":

a.  was 18 years of age or older at the time of the offenses;

b.  intentionally participated in an act, contemplating that the life of a person would be taken or intending that lethal force would be used in connection with a person, other than one of the participants in the offense, and the victim, Philip Diaz, a/k/a "Philly," died as a direct result

16

of the act (Title 18, United States Code, Section 3591(a)(2)(A));

c.      intentionally inflicted serious bodily injury that resulted in the death of Philip Diaz, a/k/a "Philly," (Title 18, United States Code, Section 3591(a)(2)(B));

d.      intentionally and specifically engaged in an act of violence, knowing that the act created a grave risk of death to a person, other than one of the participants in the offense, such that participation in the act constituted a reckless disregard for human life and Philip Diaz, a/k/a "Philly," died as a direct result of the act (Title 18, United States Code, Section 3591(a)(2)(D));

e.      in the commission of the offense, knowingly created a grave risk of death to one or more persons in addition to the victim of the offense (Title 18, United States Code, Section 3592(c)(5)); and

f.      committed the offense after substantial planning and premeditation to cause the death of a person (Title 18, United States Code, Section 3592(c)(9)).

### SPECIAL FINDINGS AS TO JOSHUA MIRABAL

32.     Count Three of the Indictment is realleged and incorporated by reference as though fully set forth herein. As to Count Three of the Indictment, alleging the murder of Philip

17

Diaz, a/k/a "Philly," in furtherance of the drug trafficking conspiracy alleged in Count Two of this Indictment, the defendant JOSHUA MIRABAL, a/k/a "Josh":

      a.    was 18 years of age or older at the time of the offenses;

      b.    intentionally participated in an act, contemplating that the life of a person would be taken or intending that lethal force would be used in connection with a person, other than one of the participants in the offense, and the victim, Philip Diaz, a/k/a "Philly," died as a direct result of the act (Title 18, United States Code, Section 3591(a)(2)(A));

      c.    intentionally inflicted serious bodily injury that resulted in the death of Philip Diaz, a/k/a "Philly," (Title 18, United States Code, Section 3591(a)(2)(B));

18

d.    intentionally and specifically engaged in an act of violence, knowing that the act created a grave risk of death to a person, other than one of the participants in the offense, such that participation in the act constituted a reckless disregard for human life and Philip Diaz, a/k/a "Philly," died as a direct result of the act (Title 18, United States Code, Section 3591(a)(2)(D));

e.    in the commission of the offense, knowingly created a grave risk of death to one or more persons in addition to the victim of the offense (Title 18, United States Code, Section 3592(c)(5)); and

f.    committed the offense after substantial planning and premeditation to cause the death of a person (Title 18, United States Code, Section 3592(c)(9)).

## FORFEITURE ALLEGATIONS

33.    As a result of committing the controlled substance offense alleged in Count One of this Indictment, ANTONIO REYES, a/k/a "Tone," a/k/a "Capo," CARLOS VEGA, a/k/a "Gotti," a/k/a "Ant," a/k/a "Califreca," a/k/a "Tone," JASON KELLY, a/k/a "Beast," ANTOINE BOYCE, a/k/a "Fetty Baller," AARON RICE, a/k/a "Goon," TYRONE SCHULTZ, a/k/a "Fats," ZAGORA DAVIS, a/k/a "Bianca," JASON JARVIS, a/k/a "Slim," JONATHAN ANGULO, a/k/a "J.O.," TAQUAN SANDERS, a/k/a "Goose," a/k/a "Goo," ANGEL

19

VILLAFANE, DEVIN RODRIGUEZ, LEON ROBINSON, a/k/a "Pop," JOSHUA NEGRON, TAHIEM HOLMES, NIJEL RICHARDSON, NATHANIEL COLEMAN, AISA TOMPKINS, and TIMOTHY SHAW, a/k/a "Tim Blood," the defendants, shall forfeit to the United States, pursuant to Title 21, United States Code, Section 853, any and all property constituting and derived from any proceeds the defendants obtained directly or indirectly as a result of the offense and any and all property used or intended to be used in any manner or part to commit and to facilitate the commission of the offense.

34.   As a result of committing the controlled substance offense alleged in Count Two of this Indictment, CARLOS VEGA, a/k/a "Gotti," a/k/a "Ant," a/k/a "Califreca," a/k/a "Tone," and JOSHUA MIRABAL, a/k/a "Josh," the defendants, shall forfeit to the United States, pursuant to Title 21, United States Code, Section 853, any and all property constituting and derived from any proceeds the defendants obtained directly or indirectly as a result of the offense and any and all property used or intended to be used in any manner or part to commit and to facilitate the commission of the offense.

<u>**SUBSTITUTE ASSET PROVISION**</u>

35.   If any of the above described forfeitable property, as a result of any act or omission of the defendants:

20

(a)    cannot be located upon the exercise of due diligence;

(b) has been transferred or sold to, or deposited with, a third person;

(c) has been placed beyond the jurisdiction of the Court;

(d) has been substantially diminished in value; or

(e) has been commingled with other property which cannot be subdivided without difficulty; it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p), to seek forfeiture of any other property of the defendants up to the value of the above forfeitable property.

(Title 21, United States Code, Section 853.)

_____
FOREPERSON

_____
PREET BHARARA        NBH
United States Attorney

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA

- v. -

ANTONIO REYES, a/k/a "Tone," a/k/a "Capo,"
CARLOS VEGA, a/k/a "Gotti," a/k/a "Ant,"
a/k/a "Califreca," a/k/a "Tone," JOSHUA
MIRABAL, a/k/a "Josh," JASON KELLY, a/k/a
"Beast," ANTOINE BOYCE, a/k/a "Fetty
Baller," AARON RICE, a/k/a "Goon," TYRONE
SCHULTZ, a/k/a "Fats," ZAGORA DAVIS, a/k/a
"Bianca," JASON JARVIS, a/k/a "Slim,"
JONATHAN ANGULO, a/k/a "J.O.," TAQUAN
SANDERS, a/k/a "Goose," a/k/a "Goo," ANGEL
VILLAFANE, DEVIN RODRIGUEZ, LEON ROBINSON,
a/k/a "Pop," JOSHUA NEGRON, TAHIEM HOLMES,
NIJEL RICHARDSON, NATHANIEL COLEMAN, AISA
TOMPKINS, TIMOTHY SHAW, a/k/a "Tim Blood,"
                                Defendants.

SEALED SUPERSEDING INDICTMENT

S2 16 Cr. 272 (VM)

(21 U.S.C. §§ 841(a), 841(b)(1)(A),
841(b)(1)(C), and 846; 18 U.S.C.
§§ 924(c)(1)(A)(i) and (ii), 924(j),
111(a) and (b), and 2.)

PREET BHARARA
United States Attorney.

A TRUE BILL

_____
Foreperson.

3|1|17  Filed superseding Indictment

Filed Arrest Warrants

Judge Nathan