

**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*

March 27, 2019

**BY ECF**

The Honorable Victor Marrero
United States District Judge
Southern District of New York
500 Pearl Street
New York, New York 10007

Re:    **United States v. Carlos Vega, S2 16 Cr. 272 (VM)**

Dear Judge Marrero:

The Government respectfully submits this letter in advance of the sentencing in this matter for defendant Carlos Vega's conviction of Title 21, United States Code, Sections 841(b)(1)(B) and 846.  Pursuant to the plea agreement, the defendant's United States Sentencing Guidelines ("U.S.S.G." or "Guidelines") range is 87 to 108 months' imprisonment with a mandatory minimum sentence of 60 months' imprisonment (the "Stipulated Guidelines Range"). The Probation Office calculates the same Guidelines range and recommends a sentence of 60 months' imprisonment.  For the reasons set forth below, the Government respectfully submits that a sentence within the Stipulated Guidelines Range would be sufficient but not greater than necessary to serve the legitimate purposes of sentencing.

**BACKGROUND**

As set forth in the United States Probation Department ("Probation")'s Presentence Investigation Report (the "PSR"), from in or about 2001, up to and including in or about April 2016, the defendant participated in a conspiracy to distribute crack cocaine and marijuana as part of a drug trafficking organization (collectively, the drug trafficking organization or the "Washington Houses DTO") in the East Harlem neighborhood of Manhattan, New York.  (PSR ¶ 11.)  Because the Court is familiar with the conduct of the Washington Houses DTO broadly, the Government will focus on the defendant's specific conduct here.  Although the defendant was initially a street-level dealer, introduced to the trade by older drug dealers, he eventually became a higher-level supplier who provided lower-level dealers with crack and marijuana for resale. (*See* PSR ¶¶ 22-24.)  When supplying other crack dealers, the defendant would provide as much as 25 grams in a single transaction.  (PSR ¶ 22.)

The defendant's role as a supplier was further revealed through wiretap interceptions. For example, the defendant was intercepted directing a co-conspirator to customers at a school building, and offering to resupply co-conspirators on multiple occasions. (PSR ¶ 23.) Beyond acting in a leadership role and supplying large amounts of crack and marijuana, the defendant also possessed firearms to protect his drug turf and profits. (PSR ¶ 24.) This action added an extra level of danger to his drug activity and further set him apart from many other DTO members.

The defendant was arrested – along with several of his co-conspirators – on April 19, 2016, and has been detained since. (*See* PSR at 2). On October 10, 2018, the defendant pleaded guilty to the lesser-included offense of Count Two of Indictment S2 16 Cr. 272 (VM) (the "Indictment"), which charged him with participating in a conspiracy to distribute crack cocaine and marijuana. (PSR ¶ 7.)

The defendant's plea was pursuant to a plea agreement with the Government. As stipulated in that agreement and set forth in the PSR, the defendant's base offense level is 28 because he distributed at least 150 grams of crack cocaine and at least 150 kilograms of marijuana. (PSR ¶¶ 7, 29.) Because the defendant possessed a firearm in connection with the offense, two levels are added. (PSR ¶ 30.) Two more levels are added to reflect the defendant's leadership role in the conspiracy. (PSR ¶ 32.) The defendant receives a three-level reduction in light of his timely acceptance of responsibility, resulting in a total offense level of 29. (PSR ¶¶ 36-38.) Although the defendant has sustained multiple prior drug convictions, the underlying conduct for each was part of the charged conspiracy in this case, rendering those convictions relevant conduct. (*See* PSR ¶¶ 39-43.) As a result, the parties and the PSR agree that the defendant is in Criminal History Category I. (PSR ¶ 45.) The resulting Guidelines range is 87 to 108 months' imprisonment, with a mandatory minimum sentence of 60 months' imprisonment. (PSR ¶ 79.) The PSR recommends a sentence of 60 months' imprisonment. (PSR at 24.)

## DISCUSSION

### I.    The Court Should Sentence Vega to a Guidelines Sentence

The general purposes of sentencing include the need for the sentence imposed to promote respect for the law, to afford adequate deterrence to criminal conduct, and to protect the public from further crimes of the defendant. *See United States* v. *Park*, 758 F.3d 193, 197 (2d Cir. 2014) (citing 18 U.S.C. § 3553(a)(2)). The Government believes that a Guidelines sentence would be appropriate to effectuate these purposes.

The Court is aware of the seriousness of the instant offense. The conduct of the Washington Houses DTO has dramatically and negatively impacted the community in East Harlem. The defendant participated in this harmful activity for years, rising from a street level dealer to a higher-level supplier. Amplifying the harm to his community, the defendant possessed firearms on various occasions throughout the conspiracy. The longevity of his participation in this conspiracy, his leadership role, and his decision to involve guns as part of the conspiracy set this defendant's conduct apart from the majority of his co-defendants in this case. The seriousness of this conduct merits a sentence above the mandatory minimum.

Moreover, the defendant's criminal history reflects the need for a substantial sentence both to deter and to protect the public from further crimes of this defendant. Although the defendant did not receive criminal history points for most of his prior drug convictions, they present an important insight into this defendant's mindset. The defendant was convicted of drug offenses in 1998, 2003, 2011, and 2013. (*See* PSR ¶¶ 39-43.) At each of those points, the defendant could have and should have recognized the harm of his criminal conduct and walked away from drug dealing. Indeed, it appears that he had the ability and opportunity to maintain lawful employment following these convictions. (*See* PSR ¶ 71.) Yet rather than using those prior convictions as turning points, the defendant instead chose to continue and even increase his involvement in the distribution of crack and marijuana. That pattern of behavior alone raises the need for a sentence above the mandatory minimum to deter this defendant and to protect the public from further drug crimes.

The defense understandably emphasizes the defendant's difficult childhood in seeking a below-Guidelines sentence. The Government acknowledges that the defendant suffered traumatic abuse as a child and was initially led by older mentors into drug dealing. That background certainly explains how the defendant turned to drug dealing in the first place. But it does not explain how the defendant continued to sell drugs well into adulthood following multiple convictions. The repeated decision to rely upon drug dealing as a source of income were the result of the defendant's conscious choices, which he made with full knowledge that he could once again face conviction and jail time.

The defendant's participation in multiple programs while detained at the MDC, as well as the remorse expressed in his letter to the Court, submitted by defense counsel as Exhibit A to the defense sentencing submission, both offer some reason to hope that the defendant may turn away from his years of drug dealing in the wake of this conviction. Yet the defendant's typed letter to the Court, dated March 14, 2019, asking for dismissal of the charge against him raises serious questions about the sincerity of the defendant's remorse. In his most recent letter, the defendant seems to suggest that he has not participated in drug dealing since 2005. As made clear from the wiretap interceptions and controlled purchases conducted in 2016 from this defendant, that is patently untrue. The defendant's contradictory statements to this Court about his own conduct raise real concerns that this case is no different from all of the defendant's prior arrests, which failed to deter him from continuing his years of drug dealing. A sentence above the mandatory minimum would send a much-needed message to this defendant about the consequences of continued criminal activity and would also protect the public from additional crimes by this defendant.

## Conclusion

For the reasons set forth above, the Government respectfully submits that a Guidelines sentence would be appropriate in this case.

Respectfully Submitted,

GEOFFREY S. BERMAN
United States Attorney

By: _____/s/_____
Maurene Comey
Assistant United States Attorney
(212) 637-2324

cc:    Jeremy Schneider, Esq. (by ECF)