K1hdmirs
Sentence

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------x

UNITED STATES OF AMERICA,                 New York, N.Y.

        v.                                16 Cr. 0272(VM)

JOSHUA MIRABAL,

              Defendant.

------------------------------x

                                          January 17, 2020
                                          1:29 p.m.


Before:

                    HON. VICTOR MARRERO,

                                          District Judge


                        APPEARANCES

GEOFFREY S. BERMAN
     United States Attorney for the
     Southern District of New York
BY:  MAURENE R. COMEY
     Assistant United States Attorney

ANDREW G. PATEL
     Attorney for Defendant


        - also present -

S.A. Imran Juman, FBI

S.A. Christopher Serotta, FBI


                SOUTHERN DISTRICT REPORTERS, P.C.
                        (212) 805-0300

K1hdmirs
Sentence

THE COURT:  Good afternoon.  Thank you.  Be seated.

Be seated, please.

This is a proceeding in the matter of United States v. Mirabal.  It's docket number 16 Cr. 0272.

Counsel, please enter your appearances for the record.

MS. COMEY:  Good afternoon, your Honor.  Maurene Comey for the government.  Joining me at counsel table are FBI Special Agents Imran Juman and Christopher Serotta.

THE COURT:  Good afternoon.  Welcome.

MR. PATEL:  Good afternoon, your Honor.  Andrew Patel for Mr. Mirabal, who is seated next to me.

THE COURT:  Thank you.

The Court scheduled this proceeding as the sentencing of the defendant in this matter.  I have read and reviewed the revised final presentence investigation report, dated July 8, 2019, which was prepared in connection with today's sentencing of Mr. Mirabal.

I have also read the submission from defense counsel, with it's accompanying exhibits, dated September 18, 2019, as well as the submission from the government, dated September 24, 2019.

The Court has also reviewed the letter from the defendant dated September 11, and the sealed submission from the government dated September 18, 2018.

Ms. Comey, has the government read and reviewed the

K1hdmirs
                              Sentence

presentence report?

        MS. COMEY:  Yes, your Honor.

        THE COURT:  Does the government have any objections to the report to raise at this point?

        MS. COMEY:  No, your Honor.

        THE COURT:  Thank you.

        Mr. Patel, have you read and reviewed the presentence report?

        MR. PATEL:  I have, your Honor.  I have reviewed it with my client as well.

        THE COURT:  Do you have any objections to the report to raise at this point?

        MR. PATEL:  Your Honor, we mentioned in our sentencing submission -- I don't know whether this rises to the level of an objection, it is more of how part of Mr. Mirabal's criminal history is categorized.  And we believe that the offense described in paragraph 32 on page 11 is relevant conduct, but everything otherwise is factually correct.  I don't believe it factors into the guideline considerations at all.  But just to make what I think was implicit explicit, I thought I should note that.

        Your Honor, there was one other submission that we provided to your Honor, which was a letter dated September 24th, that after we received the sealed victim impact statement, it is a one-page letter concerning restorative

K1hdmirs
                          Sentence

justice.

Your Honor, I have a copy here if your Honor is --

THE COURT:  You may hand it up.

MR. PATEL:  Thank you.

(Pause)

THE COURT:  Thank you.  The Court has reviewed the letter.

Mr. Mirabal, please rise.

Have you read and reviewed the presentence report?

THE DEFENDANT:  Yes, your Honor.

THE COURT:  And did you have an opportunity to discuss it with your attorney?

THE DEFENDANT:  Yes, sir.

THE COURT:  Thank you.  You may be seated.

On September 21, 2018, Mr. Mirabal pled guilty pursuant to a plea agreement before Magistrate Judge Wang to Count One of Superseding Indictment 16 Cr. 0272, which charged him with distribution -- or distributing and possessing with intent to distribute cocaine, in violation of 21 U.S.C. Sections 841(a)(1) and 841(b)(1)(C), and Count Two of Superseding Indictment 16 Cr. 0272, which charged him with conspiring to distribute and possess with intent to distribute crack cocaine, cocaine, heroin, and marijuana, in violation of 18 U.S.C. Section 371.

The Court has reviewed the transcript of the

K1hdmirs
Sentence

defendant's plea hearing and accepts the guilty plea as having been entered knowingly and voluntarily and with a factual basis.

The Court notes for the record that during the plea allocution, the defendant represented that he understood the charges against him, had had an opportunity to discuss the charges with his attorney, and was pleading guilty of his own free will.  The Court accepts these representations in accepting the defendant's guilty plea and will now continue with the sentencing.

Ms. Comey, does the government have any additional comments for the Court's consideration?

MS. COMEY:  Yes, your Honor.

The government agrees with the Probation Department that the Court should impose a sentence of 25 years for this defendant's role in the murder of Phillip Diaz.  There are three primary reasons we believe such a sentence is warranted: First is the seriousness of the offense conduct; second, and relatedly, is the pain and loss to the victim's family; and third is the defendant's continued course of criminal conduct after participating in that murder.

Taking each of these factors in turn:

First, it is difficult to overstate the seriousness of the defendant's conduct here.  He participated in a premeditated plot to murder another human being, and he did so

K1hdmirs

Sentence

for two related reasons.  First was to help his own drug business, to cut out a competing rival drug dealer, and, second, relatedly, to increase his own reputation on the street, to make it clear that he was not someone to be messed with or crossed.  And so in furtherance of those goals, the defendant agreed with other people to lure a rival dealer to a particular location in East Harlem, where he and his co-conspirators would ambush that rival dealer, shoot that rival dealer, and kill him.

Now, that plan alone is incredibly serious, and it sets this defendant apart from other murder defendants because this was not a crime of passion.  It was not a shootout that resulted from a chance encounter between two rivals.  It was a plan to lure someone to his death.  That alone warrants a very serious sentence.  And then the manner in which the defendant and his co-conspirators then carried out that plan only further supports a serious sentence.

When the rival dealer arrived at the location in East Harlem, falling for the defendant's lure, he brought other people along.  Now, at that point, when other people were there with the target of this murder plot, the defendant could have decided to call it off.  He could have said let's find another time when there aren't other people around.  But instead he and his co-conspirators went forward, firing a hail of bullets onto not only their target but also numerous bystanders, thereby

K1hdmirs

Sentence

accepting the real risk that other people would be hurt and killed.  And indeed they were.  Not only was the intended target struck but also a bystander was struck and then a third -- another bystander, Philip Diaz, was strung and killed. So as a result of the defendant's actions two people were injured and one person, an innocent bystander, was struck and killed.

Now, we note in our submission that two different types of ballistics evidence were recovered from this scene. We do not know which caliber gun the defendant fired.  We know he shot.  We don't know which gun he shot.  So we do not know whether the bullet that killed Phillip Diaz was fired from the defendant's gun.  But it is our view that for purposes of his moral culpability that does not matter.  The defendant planned to kill another human being, and then he opened fire on a group of people, accepting the risk that all of them could be injured and could be killed.

Because this victim was not the intended target, there is yet another aggravating factor in this particular murder. The victim here did not participate in any crimes, had done nothing to wrong this defendant.  He just happened to be at the wrong place at the wrong time and paid the ultimate price as a result.  Taken together, this course of conduct by the defendant warrants a very serious sentence.

Second, and relatedly, the defendant's conduct

K1hdmirs
Sentence

resulted in unimaginable pain to the family of Phillip Diaz. When he died, Phillip Diaz had two young daughters who were both under the age of 5. They grew up without getting to know their father. And the letter submitted to the Court by Phillip Diaz's sister captures better than I possibly could the pain that the Diaz family felt. They lost a father, a brother, a son. Phillip Diaz was loved. His life had value. And his family continues to mourn his loss to this day.

The family would have liked to be here to address your Honor in person. As I believe the Court knows, we had to reschedule this proceeding on multiple occasions, and so as a result of the rescheduling the family wasn't able to be here today. But I do know from their communications with the case agents that they wanted to communicate to your Honor that they still feel very much the pain and loss that they felt as a result of this defendant's actions, and they would really like to see this defendant spend the rest of his life in jail. They understand that that's not possible. They understand that the highest sentence that your Honor can impose is 25 years, but I did want to convey that that is the position of the victim's family.

Third, after the defendant participated in a murder -- of an innocent bystander -- he continued to commit a litany of crimes. Now, one might hope that after participating in a shooting that resulted in the death of an unintended bystander,

K1hdmirs

Sentence

that someone like the defendant might reflect upon the gravity of those actions, might pause, might think twice about engaging in more crimes.  The defendant's track record since 2005 makes clear that he had no such epiphany.  He continued to deal drugs for years, and he continued to engage in other crimes, including crimes of domestic violence and, most concerning, another shooting in 2009, during which additional victims were injured.

The defendant's decision to continue participating in crimes, especially a shooting, after already participating in a murder, makes clear that this defendant needs to be incarcerated for a lengthy period of time in order to protect the public.

In addition, the defendant has sustained multiple convictions, which have included sentences of incarceration, probation, and parole, none of which have deterred him from committing additional crimes.  So a lengthy period of incarceration is also needed to specifically deter this defendant and to protect the public.

In balancing those three aggravating factors against the mitigating factors that the defense has represented to your Honor in its submission, we decided that the best way to resolve this case was with a disposition that would involve a maximum of 25 years' imprisonment, and that was because, although we believe that those three aggravating factors

K1hdmirs

Sentence

absolutely merit a lengthy sentence, we also recognize the mitigating factors of the defendant's difficult background as well as the fact that we do not know whether the defendant fired the shot that ultimately killed the victim here.

In doing so, we agree that the maximum possible sentence would be five years below the bottom of the otherwise applicable guidelines' range of 30 years to life, and we agree with the Probation Department that no further leniency is warranted. We believe that any sentence lower than 25 years would risk promoting disrespect for the law, especially a sentence as low as the defense is seeking.

In seeking a below guidelines' sentence, the defense emphasizes two points that I would like to address. First, the defense suggests that a 25-year sentence would result in unwarranted disparities with the other defendants in this case.

It is important to note, though, that none of the other defendants in this case were held responsible for any crimes of violence. They were all held responsible for nonviolent drug crimes. None of the other defendants in this case were held responsible for violence, not to mention murder.

Any disparity in sentences is therefore highly warranted by the difference in the offense conduct. Indeed, a sentence of 25 years would be on par with the types of sentences that other murder defendants in this district regularly receive. And a sentence of 15 years, as suggested by

K1hdmirs

Sentence

the defense, would be woefully inadequate in light of the types of sentences that other murder defendants in this district regularly receive.

Second, the defense suggests that the defendant should receive a reduction in his sentence for the four years that he spent incarcerated for the 2009 shooting he participated in. We disagree with the defense that that shooting is relevant conduct.

I note that in his plea agreement, the defense stipulated that that particular conviction warrants three criminal history points and is not relevant conduct. And that makes sense, because that particular incident was a shooting during a robbery. There is no indication in the PSR that it involved drugs. We have no evidence that it involved drugs, and we do not believe that there is any factual basis to suggest that that is relevant conduct. It is a separate crime of violence for which the defendant served a separate sentence. And he should serve a separate sentence of 25 years for his participation in the murder of Phillip Diaz.

So for all of those reasons, as well as the reasons in our written submission, we respectfully request that the Court impose a sentence of 25 years. That's 20 years on Count One and a consecutive five years on Count Two.

Thank you, your Honor.

THE COURT:  The defendant also makes an argument in

K1hdmirs

Sentence

connection with unwarranted sentencing disparities, that the Court examine the sentences imposed on Mr. Vega.

MS. COMEY:  Yes, your Honor.

THE COURT:  Who the defendant claims was involved originally, or the government had originally contemplated charging a killing.  What is your answer to that?

MS. COMEY:  Your Honor, it is important to note that when sentencing Mr. Vega, the conduct to which he pled guilty and the relevant conduct contained in his PSR and the factual record before the Court did not include any crimes of violence. As I believe I explained to your Honor at the sentencing of Mr. Vega, although the government initially charged Mr. Vega with participating in this murder, after further investigation, we determined that we did not have proof beyond a reasonable doubt that he in fact participated in that murder.  As a result, we agreed with Mr. Vega's defense counsel that your Honor should not consider that conduct when sentencing Mr. Vega.  Instead, your Honor considered Mr. Vega's participation in nonviolent conduct, that is, the distribution of narcotics and the possession of a firearm in furtherance of that distribution of narcotics, but not any crimes of violence.

So it would not be right to consider Mr. Vega's sentence as a sentence for his participation in a murder, because that conduct was not conduct for which he was held responsible.  It was not conduct that the government proved to

K1hdmirs

Sentence

the Court, and it was not conduct that the Court considered when sentencing Mr. Vega.

THE COURT:  Thank you.

MS. COMEY:  Thank you, your Honor.

THE COURT:  Mr. Patel.

MR. PATEL:  Thank you.

Your Honor, the Court here today is sentencing Mr. Mirabal for his guilty plea to two counts, one count to the lowest level felony narcotics conspiracy and a 371 general conspiracy.  The agreement, the plea agreement, does contemplate that Mr. Mirabal is responsible for the death of Mr. Diaz.

Your Honor, Linda Diaz's letter -- that is, Mr. Diaz's sister -- was both powerful and unique.  Unique in that it was addressed to Mr. Mirabal and not to your Honor.  And it bespoke of her pain, and I'm sure she spoke for her family in describing the anguish and the loss that they feel and always will.

There is nothing that anyone can do to bring back Mr. Diaz, but there is something that we can do to at least begin to address the pain, and that is why we reached out to the government and asked them to reach out to the Diaz family and speak if they were interested in participating in a restorative justice process.  Your Honor, when -- I sort of regard that -- and they did express interest, and after this

phase of the case finishes, that is, when your Honor imposes sentence, we expect that that phase of the case will begin.

Our hope is that by allowing or enabling Ms. Diaz and other members of the family to meet with Mr. Mirabal and be heard by him directly, that nothing will ever take the pain away, but part of what causes damage from trauma is when the pain is ignored.  Mr. Mirabal is not ignoring their pain.  He has agreed to meet with them as often as they want, under whatever conditions they want.  It is the most he can do.

Your Honor might correctly say that is the least he can do, but I can assure you that often doesn't happen, and it will happen here.  That is the future.

Your Honor, this -- the events that we speak about today happened in 2005.  The 19-year-old man who was involved in that shooting has grown up.  He is a father himself.  He has hopes and plans for the future.

Part of our submission included the program he has participated in in the MDC.  The Metropolitan Detention Center in Brooklyn, as I'm sure your Honor knows, has had some problems of their own, including a major breakdown in the middle of the winter while Mr. Mirabal was there, and the freezing conditions in the facility were simply inhuman.  One of the reasons that we adjourned this, Mr. Mirabal was attacked while he was working in the kitchen at the MDC by someone who apparently has some mental health issues.  And I am pleased to

K1hdmirs

Sentence

say that the scar that runs the length of his face has healed enough that your Honor may not be able to see it from the distance that you are sitting at, but it is very much there and will be there forever.

Your Honor, in terms of the New Jersey case, that shooting arose at a drug-related robbery. That's why it is relevant conduct. And, your Honor, the Second Circuit fairly recently, in United States v. Anderson, it's 18-1839, decided September 26th of '19 -- I'm sorry, your Honor, I do not have the cite exactly. But the Circuit not only restated the law that we included in our submission, that the Court has the authority to vary from the guidelines for relevant conduct, but actually can impose a sentence below the mandatory minimum based on time served for relevant conduct. And, additionally, what the Court made clear in Anderson was that the Court even has the authority to impose a concurrent sentence for a state sentence that has not yet been imposed.

So I think it is clear and I don't think the government disputes the fact that your Honor has the authority to vary from the guidelines for the New Jersey case, if your Honor finds that to be relevant conduct, and I think the facts --

THE COURT: Mr. Patel, the question, though, is what is the factual predicate upon which the Court can make that determination of relevant conduct other than your saying that

K1hdmirs

Sentence

it was drug related in this courtroom?

MR. PATEL:  Your Honor, there was actually a trial in that matter in New Jersey that ultimately -- so there is a full record.  We could provide that --

THE COURT:  That is the record that exists in New Jersey.  The Court has to look at the record that exists here.

MR. PATEL:  That is true, your Honor.

THE COURT:  Where, in the PSR or elsewhere in the record of this proceeding, is there evidence that that action in New Jersey was drug related?

MR. PATEL:  The answer, your Honor, is, no.  I am making a representation to your Honor that this was a -- that what happened in that case is that there was a robbery of drugs and drug proceeds that resulted in a chase and a shooting. That's what happened.

Your Honor, there is one other -- your Honor, I neglected to introduce some people.  My apologies.  Your Honor, the gentleman in the orange sweatshirt sitting in the courtroom is Mr. Duprey, who took the time to write to your Honor asking that your Honor give his lifelong friend a second chance.  It is Exhibit H to our submission.

Also here is his cousin Quinones in the black sweatshirt and an old friend, David Howard.

Also in the front row is Nancy Tricamo.  Ms. Tricamo was a mitigation specialist.  Your Honor has her submission,

K1hdmirs
Sentence

and she will be serving as the facilitator for the restorative justice meeting between the Diaz family and Mr. Mirabal.

Your Honor, the 33-year old who stands before you today is asking for the Court -- acknowledging the seriousness of his offense, he is asking for a sentence that is more than twice that which was imposed on any of the codefendants here. It is a sentence that is entirely in line with the sentence -- actually, the upper end of the sentence that would be imposed in state court, where homicides are traditionally tried.  A 15-year sentence on a murder plea would be the high end of a manslaughter plea, the plea here.

So I think this is -- the sentence we've asked your Honor to impose recognizes the seriousness of the offense.  It provides both individual and general deterrence.  When Mr. Mirabal is released, he will be a middle-aged man.  He will be old enough to know better but young enough to rebuild a life.  He has intelligence and initiative and a desire to do better.

I think that this sentence is, in the words of the guidelines, sufficient but not greater than necessary to achieve all of the goals of sentencing, and that's why we ask for a sentence -- in terms of sentences imposed in this courthouse, your Honor, the spectrum is enormous, and rightfully so, because every case is unique, even in cases involving the loss of a human life.

K1hdmirs
Sentence

Your Honor, there is one final request that I would ask your Honor to consider.  Mr. Mirabal's mother suffers from COPD, and it is very difficult for her to travel.  She lives in Florida.  And so we would ask your Honor to recommend that Mr. Mirabal be designated to the appropriate facility at the Federal Correctional Complex, if I've got this correct, at Coleman, in Florida.  And the reason for that request, your Honor, is that complex has every level of facility imaginable, from camp, FCI, up through a penitentiary.  So whatever security level the Bureau of Prisons feels is appropriate, they've got it there, and he will be able to meet, to visit with his family.  And I think that is also an important rehabilitative process for him.

Your Honor, we've asked for a very substantial sentence to be imposed in this case, and we respectfully ask your Honor to impose the sentence of 15 years.  Thank you.

THE COURT:  Thank you.

Mr. Mirabal, please rise.

Is there anything you would like to say on your own behalf before the Court sentences you?

THE DEFENDANT:  Yes, your Honor.

Good afternoon.  I've been waiting for this day for a long time, and I'm finally going to get a chance to move on with my life after this day.

All I could do, your Honor, is just plan for the

K1hdmirs

Sentence

future.  I apologize to the family.  I apologize to my own family.  A lot has happened.  I have been incarcerated for eight years.  Two trials, a lot of things I went through.  Obviously, you know, I suffered a couple of injuries, etc., etc.  My main goal here is to get this over with and move on with my life, your Honor.  And I'm just asking you for a chance to be with my family.  And eight years is a long time I haven't seen my own son, so that means he was two when I was incarcerated.

My goal right now in life is just to move on and then put my business ventures in motion so I could just stay away from the streets and as soon as that gavel drops, I don't owe nothing to no one; everything is going to be paid in full -- to society, to the streets, to the government, to my family.  I hurt myself more than I hurt anybody in this.  And I just want you to know that all my time away, I feel like I accomplished a lot.

So for putting me in the jungle for 25 years, even though I'm going to survive, I'm going to stand right here in front of you as a man and show you integrity and accept responsibility, and I do accept responsibility for my actions in this unfortunate situation that occurred.

Yeah, an innocent life was tooken, but -- but I feel like I am alive but I'm dead.

(Pause)

K1hdmirs
Sentence

Excuse me.  I'm just asking for a chance.  That's all I'm asking you for.  That's it.  Give me a chance to show you and my family and myself that I could move on.  This day has been haunting me all my life.

In 2005 I lost my father, I lost myself, I lost everything.  I just want -- I just want what's mine's back, your Honor, please.  That's what I ask for.

I am going to keep it short.  I don't normally break down, but I need to get this over with.  No matter what you do today, I just want to be clear that I'm willing to face it head on what I've done.  And my intention was never to take an innocent life.  But as you see, I'm standing here alone, holding myself together for all the trials and tribulations.  Yeah, an innocent life was taken, a life has been taken, but what innocent life going to give.  That's all I'm asking for.

I apologize for breaking down like this.  I just want to move on.

Thank you, your Honor.

THE COURT:  Thank you.

In accordance with the decision the United States Supreme Court in United States v. Booker, while the United States Sentencing Guidelines are not mandatory, the Court nonetheless must consult those guidelines and take them into account when sentencing.  Therefore, the Court has considered the findings of fact stated in the presentence investigation

K1hdmirs

Sentence

report, as well as the guidelines' analysis and the recommendations contained therein.  The Court has weighed this information along with the factors listed in 18 U.S.C. Section 3553(a) in coming to its final sentencing decision in this case.

The Court adopts the factual recitation in the presentence investigation report regarding the criminal history category, offense level, and sentencing range.  Therefore, the Court finds that under the guidelines, Mr. Mirabal's offense level amounts to 40 and his criminal history category falls into Category IV.  The guidelines' range of imprisonment for that offense level and criminal history category is 300 months' imprisonment.

Mr. Mirabal pled guilty to one count of distribution and possessing -- or possession with intent to distribute cocaine and one count of conspiracy to distribute and possess with intent to distribute narcotics.  The Probation Office has recommended that the Court impose a sentence of 300 months' imprisonment.  That term would consist of 240 months on Count One and 60 months on Count Two to run consecutively.

Subsection (a)(1) of 18 U.S.C. Section 3553 requires that the Court take into consideration the nature and circumstances of the offense and the history and characteristics of the defendant.  Subsection (a)(2) of 18 U.S.C. Section 3553 requires that the Court consider the need

K1hdmirs
                              Sentence

for the sentence to promote certain objectives of the criminal

justice system, namely, punishment, specific and general

deterrence, and rehabilitation.  Pursuant to Section

3553(a)(6), the Court is also directed to consider the need to

avoid unwarranted sentencing disparities among defendants with

similar records and similar offenses in other cases as well as

in connection with the case at hand.

          Mr. Mirabal, please rise.

          Taking into account the nature and circumstances of

the offense and the history and characteristics of the

defendant, and considering all of the factors listed in 18

U.S.C. Section 3553(a), the Court finds that a sentence of 300

months' imprisonment is reasonable and appropriate and that

such a term is sufficient but not greater than necessary to

promote the proper objectives of sentencing.  That sentence

will consist, as indicated in the Probation Department's

report, of 240 months on Count One and 60 months on Count Two

to run consecutively.

          Upon your release from imprisonment, you shall be

placed on supervised release for a term of three years on each

count to run concurrently.

          I will not impose a fine because the Court has

determined that you do not have the ability to pay such a fine.

However, you are ordered to pay to the United States a special

assessment of $200, which shall be due immediately.

K1hdmirs
Sentence

Mr. Mirabal, you must comply with the standard conditions 1 through 12 of supervised release and the following mandatory conditions:

You shall not commit another federal, state, or local crime;

You shall not unlawfully possess a controlled substance;

You shall refrain from any unlawful use of a controlled substance. You shall submit to one drug test within 15 days of release from imprisonment and at least two periodic drug tests thereafter, as determined by the Probation Department;

You shall cooperate in the collection of DNA, as directed by the probation officer.

In addition, you shall obey the following special condition:

You shall submit your person, and any property, residence, vehicle, papers, computer, other electronic communication, data storage devices, cloud storage or media, and effects to a search by the United States Probation Officer and, if needed, with the assistance of any law enforcement. The search is to be conducted when there is reasonable suspicion concerning a violation of the conditions of supervised release or unlawful conduct by the person being supervised. Failure to submit to search may be grounds for

K1hdmirs

Sentence

revocation of release.  You shall warn any other occupants that the premises may be subject to search pursuant to this condition.  Any search shall be conducted at a reasonable time and in a reasonable manner.

Mr. Mirabal, do you understand each of these conditions?

THE DEFENDANT:  Yeah.

THE COURT:  You shall report to the nearest Probation Office within 72 hours of release from custody.

The Court recommends that you be supervised by the district of residence.

In imposing this sentence, I have taken into account a number of considerations.  First, and perhaps foremost, is the seriousness of the offense that is involved here.  As the government pointed out, this was not an ordinary shootout in the case -- in the context of a drug fight; it was a premeditated attempted murder.  The defendant has repeatedly made reference to the fact of what happened in 2005 as if it had all ended at that time and he had focused on the innocent life that was lost then.

Two things.  One is that his conduct did not cease in 2005.  As has been pointed out, just four years later, 2009, he was involved in another shootout in which conceivably people could have gotten killed.

Second, while he emphasizes the fact that Mr. Diaz was

K1hdmirs
Sentence

killed in 2005, he also ignores that there were two other people who were shot at that point, conceivably suffering very serious injuries and conceivably also could have gotten killed.

Third, again, Mr. Mirabal's conduct in unlawful drug trade did not end in 2005; it continued much after that, up to practically the point at which he was arrested in connection with this case.

The Court has also taken into account the points made by defense counsel concerning unwarranted sentencing disparities and sentences imposed in this courthouse. In fact, just one week ago in this courtroom, this Court sentenced a defendant who had been involved in drug-related activities involving -- including a murder and use of firearms. This defendant was one of two who were involved in this conspiracy. One of them was sentenced to 25 years and the other one, whose involvement was slightly less, to 276 months, which is 23 years. So in terms of sentences in this courthouse for drug-related killings and violence, in fact, a sentence of 25 years on Mr. Mirabal is not unwarranted and is not a disparity.

The sentence as stated is imposed.

Mr. Mirabal, to the extent that you have a right to appeal your sentence and you are unable to pay the cost of an appeal, you have the right to apply for leave to appeal in forma pauperis, meaning as a poor person. If you make such a request, the Clerk of Court must immediately prepare and file a

K1hdmirs

Sentence

notice of appeal on your behalf.

Do you understand your right to appeal to the extent that it may exist?

THE DEFENDANT:  Yeah.  I would like to --

MR. PATEL:  Your Honor, I will discuss Mr. Mirabal's appellate rights with him.

THE COURT:  All right.  Ms. Comey, are there any remaining counts or underlying indictments that need to be dismissed?

MS. COMEY:  Yes, your Honor.  The government would move to dismiss the underlying indictments as to this defendant.

THE COURT:  That will be so ordered.

The defendant has requested that he be -- that the Court recommend that he be held in custody at the facility in Florida.  The Court will so recommend.

MR. PATEL:  Thank you, your Honor.

THE COURT:  Is there anything else, Mr. Patel?

MR. PATEL:  No.  Thank you.

THE COURT:  Ms. Comey?

MS. COMEY:  Yes, your Honor.  Because the defendant did formally object to paragraph 32 of the PSR, I don't believe your Honor formally announced your ruling on that objection.  So I think it would be helpful for the record if your Honor wouldn't mind clarifying your ruling on the defense's objection

K1hdmirs
                          Sentence

to that paragraph as it applies to this defendant's criminal history.

          THE COURT:  The Court heard the argument made by Mr. Patel, and the Court rejects the argument and accepts the PSR as is.

          All right.  Thank you.  Have a good day and a good weekend.

          (Adjourned)